UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESTATE OF DIAMOND SMITH, et. al, ) | |
| ) | |
| Plaintiffs, ) | Civil Action |
| ) | 14-cv-06432(PGS)(TJB) |
| v. ) | |
| ) | |
| THE STATE OF NEW JERSEY ) | **MEMORANDUM** |
| DIVISION OF CHILD PROTECTION ) | |
| AND PERMANCY, et. al, ) | |
| ) | |
| Defendants. ) | |

This matter comes before the Court on a motion to certify as a final judgment its August 18, 2021 Memorandum and Order granting summary judgment to the State of New Jersey Department of Children and Families ("Department"), its Commissioner and Caseworkers. Fed. R. Civ. P. 54(b). The movant is Scott Krasny, who is the Administrator ad Prosequendum ("Administrator") on behalf of the Estate of Diamond Smith ("Decedent") and is also guardian ad litem of Masceo Emanuel IV and Sa'miyah Emanuel.[1] For the reasons set forth below, Administrator's motion is granted.

**I.**

This action was originally filed about seven years ago (2014) following the tragic death of the Decedent on July 10, 2012. All of the relevant facts are set forth in the Court's August 18, 2021 Memorandum and Order (ECF No. 168) and are incorporated herein, plus some additional facts and procedural history are provided to add further context.

---

[1] Within this memo and in the previous memorandum (ECF No. 168), Krasny, in both of his capacities, is referred to as the Administrator.

1

Within the Third Amended Complaint ("TAC") (ECF No. 69), the Administrator alleged 25 causes of action against four different categories of defendants that are designated as: (1) the "Decedent's Parents" who are Dominique Smith and Masceo Emmanuel III; (2) the "State Defendants,"[2] who are the Department, Allison Blake, Ph.D. ("Commissioner"), Stephanie Holliday, Tina Williams, and Deborah Augustus ("Caseworkers"); (3) the "Medical Defendants," who are Lotus Medical and assorted individual providers; and (4) fictious defendants comprising a number of unknown physicians, nurses, medical staff, medical facilities, supervisors, managers, and caseworkers. (TAC ¶¶ 16-20).  Only the State Defendants are discussed herein.

Within the TAC, the Administrator alleges that the State Defendants violated Decedent's constitutional rights to substantive and procedural due process under 42 U.S.C. § 1983 and the New Jersey State Constitution (TAC ¶¶ 43, 52, 71, 81).[3]  In addition to the constitutional claims, there were a series of counts alleging tortious conduct, including but not limited to: negligent and intentional misconduct (TAC ¶¶ 102-107), failure to train (TAC ¶ 111), failure to comply with statutory duties (TAC ¶ 122), and failure to protect (TAC ¶ 116).

Due to the State Defendants' intended defenses under § 1983 and the New Jersey Tort Claims Act, discovery was predominately limited to the claims against the State Defendants, whereupon this motion for summary judgment occurred immediately thereafter. (Declaration of Craig J. Hubert at ¶6, ECF No. 171-2).  As recognized, the State Defendants are the only defendants subject to claims under the Constitution and the New Jersey Tort Claims Act.

---

[2] The Department is sometimes referred to as "DCF", "DYFS", or "DCPP".  These entities are divisions within the Department, but their names have changed over time. Herein, the sole reference is to the Department.  (TAC ¶ 7).
[3] There is also an alleged violation of the 14th Amendment, but there were insufficient facts alleged to sustain a cause of action. (TAC ¶¶ 113-14).

## II.

When deciding whether to certify a ruling under Rule 54(b), district courts must engage in a two-step inquiry: (1) the district court must conclude it is dealing with a "final judgment" in that it "is a decision upon a cognizable claim for relief" and is an "ultimate disposition of an individual claim entered in the course of a multiple claims action" and; (2) the court must decide whether there is "any just reason for delay" of an appeal. *See Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7-8 (citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)).

In reviewing Rule 54(b), the Supreme Court highlighted that the "function of the district court under the Rule is to act as a dispatcher[,]" finding that determination of the "appropriate time when each final decision in a multiple claims action is ready for appeal" should be "left to the sound judicial discretion of the district court" and exercised "in the interest of sound judicial administration." *Id.* (internal quotations omitted). District courts are cautioned against freely utilizing this function, however, because certification under Rule 54(b) is "the exception, not the rule, to the usual course of proceedings in a district court." *See Elliott v. Archdiocese of N.Y.*, 682 F.3d 213, 220 (3d Cir. 2012). Certification is to be limited to those "infrequent harsh case[s] as an instrument for the improved administration of justice and the more satisfactory disposition of litigation[.]" *Id.*

Once certain that it is dealing with a "final judgment," the district court must decide whether "there is no just reason for delay" of an appeal by considering the following factors:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*See Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 203 (3d Cir. 2006) (citing *Allis-Chalmers Corps. v. Philadelphia Elec. Co.*, 521 F.2d 360, 364 (3d Cir. 1975)). In short, the certifying district court should: (1) clearly cite to Rule 54(b); (2) include express considerations of the *Berckeley* factors; and (3) explicitly state why "there is no just reason for delay" in order to grant such a motion. *See id.* at 202-04. "The burden rests with the moving party to overcome the normal rule that 'no appeal be heard until the entire ease is completed.'" *Wärtsilä NSD N. Am., Inc. v. Hill International, Inc.*, No. 99-4565, 2004 U.S. Dist. LEXIS 33734, at *2 (D.N.J., 2004) (citing *In re National Smelting of New Jersey, Inc. Bondholders' Litigation*, 695 F. Supp. 796, 797 (D.N.J. 1988)).

### III.

Because neither side disputes the finality of the summary judgment decision, the Court proceeds directly to consideration of the five *Berckeley* factors, enumerated above, to determine whether there is any just reason for delay of an appeal.[4]

    1)    <u>The adjudicated and unadjudicated claims are sufficiently distinct.</u>

Severing the dismissed claims for early appeal satisfies this factor. In managing the litigation, the Magistrate Judge and the parties clearly understood that the State Defendants could be separated into its own distinct group based on their role and their defenses. The State Defendants are the only group that can be subject to claims under the Constitution and the New Jersey Tort Claims Act. As such, the adjudicated claims against the State Defendants are widely different from the other defendants.

---

[4] Although the parties do not expressly cite to *Berckeley*, they each proffer arguments encompassed by the *Berckeley* factors (Pl. Br. at 4-6, ECF No. 171-1; Pl. Reply at 2-3, ECF No. 179) or cite to cases that in turn relied on *Berckeley* (State Def. Opp. at 11-13, ECF No. 176) (citing *Amboy Bancorporation v. Jenkens & Gilchrist*, 2009 WL 4117355 (D.N.J. Nov. 18, 2009); *Advanced Orthopedics & Sports Med. Inst. v. Int'l Union of Operating Eng'rs Local 14-14B*, 2020 WL 4345301 (D.N.J. July 29, 2020)).

4

2) <u>Whether future developments in the District Court may possibly moot the need for review.</u>

It is unlikely that future developments will moot the need for review. The dismissed claims foreclose any foreseeable liability issues arising against the State Defendants. No matter how the case evolves, the summary judgment decision would not be altered. Further, it is noteworthy that the other Defendants have preserved their right to present a comparative negligence defense to proportion fault. (State Def. Opp. at 4). They argue that the State Defendants are wrongdoers and the percentage of State Defendants' fault should be considered by the jury. *Id.* at n.3. The issue had not been addressed by the Court, but the comparative negligence issue will not moot the summary judgment decision. *See generally* N.J.S.A. 2A:15-5.1 to -5.3.

3) <u>Whether there is a possibility that the reviewing court might be obliged to consider the same issue a second time.</u>

Since these liability issues are based on constitutional grounds and on the New Jersey Tort Claims Act, they apply only to the State Defendants. As such, it is highly unlikely that the issues will arise a second time.

4) <u>Whether there is the presence or absence of any claim or counterclaim which may result in a set-off against the judgment to be made final.</u>

The parties have not presented any specific claim or counterclaim which may result in a set-off against the judgment. As noted above, there is an issue regarding the allocation of fault (comparative negligence), however, it does not present any specific claim or counterclaim against the State Defendants that would impact the summary judgment decision.

5) <u>Miscellaneous Factors.</u>

Finally, judicial efficiency favors certifying the appeal for several reasons. First, it will eliminate duplicative discovery. At present, discovery has related primarily to the State

Defendants, but there is a need for other discovery pertaining to the Medical Defendants and Decedent's Parents (Discovery 2).  If the case proceeds here without an ultimate resolution as to the State Defendants, the State Defendants will not participate in Discovery 2.  If the State Defendants' liability is reversed on appeal after trial, the State Defendants may then seek discovery against those Defendants subject to Discovery 2.[5]  This will further delay the case.

Second, an early appeal may foster more substantive settlement discussions because the parties will have more knowledge of their liability rather than guessing the odds of an appeal.

Third, an early appeal will result in one comprehensive trial, thus streamlining the matter.

Fourth, early appeal would resolve liability issues of State Defendants most efficiently.

The Court is cognizant of the need to avoid piecemeal appeals and the need to approach requests for 54(b) certifications conservatively. Nonetheless, the Court is indeed convinced that the present matter is one of the few "infrequent harsh case[s]" where early review would greatly reduce the time and cost needed for final resolution of this old case. *See Ellis*, 682 F. 3d at 220.

**IV**.

Before closing, one final comment on the State's position.  The State Defendants assert that certification here would create "an entire new class of cases" wherever immunity defenses arise. (State Def. Opp. at 8-9) (citing *Myers v. Med. Ctr. Of Del.*, 28 F. App'x 163 (3d Cir. 2002)).  However, the *Myers* case is clearly distinguishable.  Admittedly, in *Myers*, there were state defendants and medical defendants as there are here, but the Third Circuit's decision to deny an early review lay on different grounds.  Instead, the Third Circuit in *Myers* remanded the case primarily because the District Court failed to cite Rule 54(b), made no determination that

---

[5]  The State Defendants indicated that they will not request additional discovery, but years of experience suggests otherwise.

6

there was "no just cause for delay," and included no analysis of the *Berkeley* factors when certifying its original order as a final judgment.

## V.

In closing, the Order granting summary judgment is a final judgment upon a cognizable claim for relief in a case where there are multiple parties and claims. For the reasons stated above, there is no just cause for delay of an appeal.

                                                     s/*Peter G. Sheridan*
                                                     PETER G. SHERIDAN, U.S.D.J.